**Adam ODENWALT, Kristopher Odenwalt and Jennifer Odenwalt, Plaintiffs**

v.

**Frank D. GILLIS, Pennsylvania Department of Corrections, Defendants**

No. CIV.A. 1:03–1913.

United States District Court, M.D. Pennsylvania.

July 27, 2004.

---

Adam Odenwalt, Coal Township, PA, pro se.

Kristopher Odenwalt, Wrightsville, PA, pro se.

Jennifer Odenwalt, Wrightsville, PA, pro se.

R. Douglas Sherman, Office of Attorney General, Harrisburg, PA, for Defendants.

## *MEMORANDUM*

MANNION, United States Magistrate Judge.

Pending before the court are the defendants' motion to dismiss the plaintiff's complaint, (Doc. No. 18), and two (2) motions for injunctive relief filed by the plaintiff, (Doc. Nos. 2 & 14).

## I. Background

The plaintiff, Adam Odenwalt, filed the instant action pursuant to 42 U.S.C. § 1983 on behalf of himself and his two (2) minor children. The plaintiff alleges that the defendants have violated his Eighth and Fourteenth Amendment rights in denying him contact visits with his minor children. The defendants have moved to dismiss the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6).

The complaint alleges that the plaintiff was committed to the State Correctional Institution, Camp Hill, ("SCI–Camp Hill"), Pennsylvania, on January 10, 2002, after having been convicted on charges of involuntary deviate sexual intercourse[1] and sentenced to five (5) to ten (10) years of incarceration. The plaintiff notes that he has not been classified as a sexually violent predator under "Megan's Law[2]."

The plaintiff alleges that from January 10, 2002, through March 24, 2002, he was allowed three (3) contact visits with his minor children at SCI–Camp Hill. Subsequently, however, on March 25, 2002, his contact visits were terminated due to Department of Corrections Policy DC–ADM 812–2, which states, in pertinent part, "Any inmate who, as an adult or as a young adult offender, was ever convicted or adjudicated for physical or sexual offense against a minor is prohibited from having a physical contact visit with any minor child …" As a result, from April 2, 2002, through May 2, 2002, the plaintiff alleges that he was forced to have non-contact visits with his children.

On May 3, 2002, the plaintiff was transferred to SCI–Coal Township, where he remained until November 30, 2002. During that time, the plaintiff alleges that he was allowed to have four (4) contact visits with his children. After this time, the plaintiff alleges that his contact visits were terminated and he was again only permitted non-contact visits with his children.

According to the plaintiff, he has enrolled in and completed Phase I of the Sex Offender Program, as well as the Parenting Skills Program. Subsequent to the completion of these programs, the plaintiff alleges that various individuals, including a family therapist and a Department of Corrections Psychiatrist, recommended that he be allowed contact visits with his children. (Doc. No. 1, Ex. A). Despite these

---

**1.** These offenses were committed against the plaintiff's minor stepdaughter. (Doc. No. 1, Ex. A).

**2.** In 1994, seven year old Megan Kanka was abducted, raped, and murdered near her New Jersey home by a neighbor who had previously been convicted of sex offenses against young girls. Thereafter, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Title 17, § 170101, 108 Stat. 2038, as amended, 42 U.S.C. § 14071, which conditions certain federal funds for law enforcement on the States' adoption of a "Megan's Law," so named after Megan Kanka. By 1996, every State, the District of Columbia, and the Federal Government had passed a "Megan's Law." While these laws vary from State to State, they generally require convicted sex offenders to register with law enforcement officials, who then notify community members of the registrants' whereabouts.

recommendations, the plaintiff alleges that defendant Gillis continued to deny him contact visits.

After unsuccessfully grieving the issue, the plaintiff alleges that he hired an attorney to assist him in securing contact visits with his children. On July 28, 2003, a hearing was held in the Court of Common Pleas of York County, Pennsylvania, after which an order was entered granting him contact visits with his children "as they may be arranged.[3]" (Doc. No. 1, Ex. B). Despite the court's order, as of September 5, 2003, the plaintiff alleges that the defendants continue to deny him contact visits with his children. As a result, on October 27, 2003, the plaintiff filed the instant action in which he alleges violations of his Eighth and Fourteenth Amendment rights.

## II. Motion to Dismiss Standard

Defendants' motion to dismiss is brought pursuant to provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the parties fail to state a claim upon which relief can granted. Dismissal should only occur where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotels and Ca-*

*sino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998)(citing *ALA, Inc. v. CCAIR Inc.*, 29 F.3d 855, 859 (3d Cir.1994)).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. *See Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). It must also be remembered that when considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will ultimately prevail on the merits of his claim, but only whether he is entitled to offer evidence in support of them. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. Discussion

 As a preliminary matter, the plaintiff has named as a defendant the Pennsylvania Department of Corrections. To this extent, federal courts can not consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Edelman v. Jordan*, 415 U.S. 651, 662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends to suits asserting civil rights violations where the state is named as a defendant. *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir.

---

**3.** The state court later clarified its order to reflect:

> While our Order of August the 1st, 2003, referred to physical contact visits, such visits can only occur pursuant to the visitation policies and regulations of the Pennsylvania Department of Corrections.

> If such contact visits can be arranged pursuant to Department of Corrections policy, then such visits should be so arranged.
> It is our understanding, however, that such visits may not be able to be arranged given the current circumstances of father's incarceration.

(Doc. No. 37).

1981). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." *Chittister v. Dep't. of Community & Economic Dev.*, 226 F.3d 223, 226 (3d Cir.2000). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be sued]." *Laskaris*, 661 F.2d at 25 (citing 42 Pa. Cons.Stat. Ann. §§ 8521(b)). Additionally, § 1983 does not abrogate the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Further, an essential element of any claim under § 1983 is that the alleged wrongdoing was committed by a "person." 42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, the instant action will be dismissed with respect to the Pennsylvania Department of Corrections.

With respect to the merits of the claims against defendant Gillis, at the outset, the court notes that the interests asserted by the plaintiff in the instant action are important ones. The United States Supreme Court has held that "parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." *Hodgson v. Minnesota*, 497 U.S. 417, 483, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990).

■ Nevertheless, it has long been held that while "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," prison restrictions that implicate prisoners' constitutional rights may be upheld if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 84, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform,' the Supreme Court has counseled judicial restraint in the federal courts' review of prison policy and administration. *Id.* at 84, 107 S.Ct. 2254.

■ This deferential standard applies regardless of the fact that the rights of non-inmates may also be implicated. Otherwise, to apply a heightened level of scrutiny to cases involving prison regulations affecting the rights of both prisoners and non-prisoners would unreasonably constrain the corrections system. *See Thornburgh v. Abbott*, 490 U.S. 401, 410 n. 9, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). *See also Brewer v. Wilkinson*, 3 F.3d 816, 823 n. 9 (5th Cir.1993)("the *Thornburgh* Court stressed … that even though prison regulations or practices might burden the fundamental rights of 'outsiders,' the proper inquiry was whether the regulation or practice in question was reasonably related to legitimate penological objectives").

Recently, the Supreme Court addressed the issue of whether restrictions on inmates' visitation privileges violated their constitutional rights. *Overton v. Bazzetta*, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) [4]. In *Overton*, a class of state prisoners and their prospective visitors brought a civil rights action pursuant to § 1983 challenging prison regulations that: (1) excluded from family members with

---

4. The court recognizes that the policy at issue in *Overton* did not bar visits with the inmates' own children, as is the circumstance in this case. However, the Court's application of the *Turner* factors offers guidance in considering the claims raised herein. *See Wirsching v. Colorado*, 360 F.3d 1191, 1199 (10th Cir. 2004).

whom inmates were entitled to non-contact visits, any minor nieces and nephews and children as to whom parental rights had been terminated; (2) required all children visiting an inmate to be accompanied by a family member or legal guardian; (3) prohibited inmates from visiting with former inmates; and (4) subjected inmates with two substance abuse violations to a ban of at least two years on all future visitation, other than visits from attorneys and members of the clergy.

■ In holding that the prison regulations did not infringe upon the inmates' First Amendment constitutional rights, the Court noted that "[a]n inmate does not retain rights inconsistent with proper incarceration," and that "freedom of association is among the rights least compatible with incarceration." *Id.* In determining that the regulations survived constitutional challenge, the court considered four (4) factors: "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Id.* (quoting *Turner,* 482 U.S. at 89–91, 107 S.Ct. 2254).

The Court further analyzed the regulations under the Eighth Amendment and found that although the "restriction undoubtedly makes the prisoner's confinement more difficult to bear," it "[was] not a dramatic departure from accepted standards for conditions of confinement"; it did not "create inhumane prison conditions, deprive inmates of basic necessities or fail to protect their health or safety"; and did not "involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur." *Id.* Therefore, the Court found no violation of the inmates' Eighth Amendment rights.

In *Wirsching v. Colorado, infra,* a convicted sex offender filed a § 1983 civil rights action challenging a prison regulation which denied him all visitation rights with his minor daughter[5]. In that case, the United States Court of Appeals for the Tenth Circuit held that the regulation was not violative of the plaintiff's First, Fourteenth or Eighth Amendment rights. In so holding, the court addressed each of the factors set forth in *Turner* and discussed in *Overton.*

Initially, with respect to the first *Turner* inquiry, the court found that a rational connection existed between the prison regulation and the legitimate governmental interest advanced by prison officials for

---

**5.** The policy at issue in *Wirsching* read as follows:

Visitors will be excluded from the visiting list with authorization from the Administrative Head if they:

a. Are the victim of the sex offender they are attempting to visit, except under circumstances approved in advance and in writing by the sex offender treatment staff;

b. Are under the age of eighteen (18) visiting an offender who has been convicted at any time of sexual assault on a child, incest, or aggravated incest unless approved in advance and in writing by the sex offender treatment staff;

c. Are victims of the offender or are children under the age of eighteen (18) years of age, if such visits would be contrary to the rehabilitation of the offender as documented by mental health staff who will evaluate the offender and make recommendations regarding visits which may be detrimental to the offender's rehabilitation.

d. Sex offenders who have perpetrated against children shall not loiter near children in the visiting room or participate in any volunteer activity that involves contact with children except under circumstances approved in advance and in writing by the sex offender treatment staff.

*Wirsching,* 360 F.3d at 1194–95.

the regulation, in that the regulation was implemented for the protection of the children themselves and to further the rehabilitation of convicted sex offenders. Although the plaintiff argued that the record contained no evidence that he had ever harmed his daughter and cited to decisions acknowledging the rehabilitation effect of prisoners' visits with family members [6], the court found that the plaintiff's arguments ignored the substantial deference due "to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Wirsching,* 360 F.3d at 1200 (citing *Overton,* 539 U.S. at 132, 123 S.Ct. 2162). The court further recognized that "the burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

As to the second *Turner* inquiry, the court found that the reasonableness of the regulation was supported by the fact prison officials allowed the plaintiff to contact his children by letter and telephone. In doing so, the court found that alternatives "need not be ideal ... they need only be available." *Id.* (citing *Overton,* 539 U.S. at 135, 123 S.Ct. 2162).

With respect to the third and fourth *Turner* inquiries, (i.e., the effect within the prison of accommodating the asserted right and the availability of alternatives that would accommodate the prisoner), the court gave "little weight" to the plaintiff's arguments, again citing to the deference afforded to prison officials. *Id.* at 1201 (citing *Overton,* 539 U.S. at 135, 123 S.Ct. 2162).

In addressing the plaintiff's arguments, the court noted that

"we do not discount the importance of [the plaintiff's] relationship with his children. Even inside the prison walls, that relationship is generally deserving of some form of protection. The complete ban upon Mr. Wirsching's visits with his children is indeed a harsh restriction, significantly more severe than the ban on family visits upheld in *Overton.* Prison officials should be careful to ensure that restrictions upon visitation with a prisoner's children are justified by the circumstances, and they should seriously consider less draconian restrictions-such as closely monitored, noncontact visitation.

\* \* \* \* \* \*

Nevertheless, we are aware that the treatment of sex offenders, like many other aspects of prison administration, presents substantial difficulties. On this record we conclude that ... the defendants did not violate Mr. Wirsching's First and Fourteenth Amendment rights."

*Id.*

■ Applying the analyses of the *Turner* factors in *Overton* and *Wirsching* to the case at hand, the court holds that the prison regulation in the instant case, which only places restrictions on the plaintiff's contact visitations with his children, is not violative of either the Eighth or Fourteenth Amendments.

Initially, as set forth above, there are clearly legitimate penological interests in disallowing sex offenders from having contact with minors, whether it be their own children or otherwise. *See Overton,* 539 U.S. at 133, 123 S.Ct. 2162 ("[p]rotecting children from harm is also a legitimate goal."). Although the plaintiff alleges that he had full custody of his children before his incarceration and that they were never removed after his arrest because he did not pose any harm to them, this again does

6. *See Ramos v. Lamm,* 639 F.2d 559, 581 (10th Cir.1980).

not take into account the substantial deference due "to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Wirsching*, 360 F.3d at 1200 (citations omitted).

Moreover, considering the second *Turner* factor, the plaintiff does not allege that he has been denied all visitation with his children, but only that he has been denied *contact* visitation. Although it may not be the type of visitation he chooses, the plaintiff has been granted visitation with his children nonetheless. This non-contact visitation is a reasonable alternative to contact visitation in light of the circumstances surrounding the regulation.

The third *Turner* factor also weighs in favor of the defendants, as the plaintiff has failed to allege how accommodating his request would not impair the ability of prison officials to protect children within the confines of the institution. Thus, particular deference must be given to the prison administrators' regulatory judgment. *See Overton*, 539 U.S. at 135, 123 S.Ct. 2162.

Finally, the plaintiff has failed to set forth any "ready alternative" which would further his interest without imposing more than de minimus cost to the penological goal asserted.

Considering the above, as well as the analysis of the Eight Amendment claim set forth by the Court in *Overton*, the plaintiff in the instant action has failed to set forth a constitutional claim upon which relief may be granted. As such, the court will grant the defendants' motion to dismiss.

As a final matter, the plaintiff has pending before the court two (2) motions for injunctive relief. (Doc. Nos. 2 & 14).

In considering motions for injunctive relief, the court must evaluate: (1) whether the movant has shown probability of success on the merits; (2) whether the movant will be irreparably harmed by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party: and (4) whether granting the preliminary relief will be in the public interest. *Brian B. v. Commonwealth*, 230 F.3d 582 (3d Cir. 2000).

Based upon the court's discussion above in relation to the defendants' motion to dismiss the plaintiff's complaint, the plaintiff has failed to show a probability of success on the merits of his claim. Therefore, he is not entitled to injunctive relief, and his motions will be denied.

## IV. Conclusion

Based upon the foregoing, the defendants' motion to dismiss the plaintiff's complaint, (Doc. No. 18), will be granted, and the plaintiff's motions for injunctive relief, (Doc. Nos. 2 & 14), will be denied. An appropriate order will follow.

### *ORDER*

In accordance with the court's memorandum issued this same day,

**IT IS HEREBY ORDERED THAT:**

(1) the defendants' motion to dismiss the plaintiff's complaint, (**Doc. No. 18**), is **GRANTED**; and

(2) the plaintiff's motions for injunctive relief, (**Doc. Nos. 2 & 14**), are **DENIED**.